**FILED**
**United States Court of Appeals**
**Tenth Circuit**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

**July 31, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

MICHAEL DRISCOLL,

    Plaintiff - Appellant,

v.

THE  CITY AND COUNTY OF
DENVER, a municipal entity; PAUL
PAZEN, Chief of Police; PATRICK
PHELAN; RICK EBERHARTER;
TIMOTHY HYATT; CHRISTOPHER
COCHRAN, in their individual capacities,

    Defendants - Appellees.

No. 25-1139
(D.C. No. 1:21-CV-02866-PAB-NRN)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **CARSON**, and **ROSSMAN**, Circuit Judges.
_____

Plaintiff Michael Driscoll protested in the streets of Denver following George
Floyd's death.  A projectile hit Plaintiff's head and injured him.  He sued the City
and County of Denver.  The problem for Plaintiff is that officers from Jefferson
County, Colorado were at the scene that evening.  And Plaintiff did not provide the
district court with evidence to show a Denver police officer, rather than a Jefferson
County officer, fired the projectile.

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

With no evidence as to who fired the projectile, the district court entered summary judgment against Plaintiff.  In the district court's view, allowing the case to move forward would require a jury to rely on mere speculation.  We agree with the district court that Plaintiff presented insufficient evidence to survive summary judgment on this portion of his complaint.  But Plaintiff also alleged the City and County of Denver violated his constitutional rights in other altercations earlier the same evening.  The district court, however, failed to address the additional alleged instances of constitutional violations by Denver but still granted summary judgment on all claims.  The district court must address these alleged violations in the first instance.  We exercise jurisdiction under 28 U.S.C. § 1291 and affirm in part, reverse in part, and remand for further proceedings.

I.

Following the death of George Floyd, Denver faced unprecedented protests. The Denver Police Department made and executed an operations plan for each protest day from May 28, 2020, to June 2, 2020.  On May 30, the City of Denver imposed a curfew on all public places from 8:00 p.m. until 5:00 a.m.  The May 31, 2020, plan stated that law enforcement would respond in accordance with Denver's crowd management manual and that any officer deploying chemical agents or using force during the events would adhere to normal use of force reporting requirements.

Due to the sheer volume of protests and protestors, other law enforcement agencies assisted the Denver Police Department in responding to the protests.  The Jefferson County Regional Special Weapons and Tactics Team ("Jefferson County

SWAT") was one such partnering agency on May 31, 2020. The Denver Police Department assigned Jefferson County SWAT to respond to locations needing a law enforcement presence as an immediate reaction team. Outside agencies such as Jefferson County SWAT used their own standard protocols and made their own decisions about use of force.

Plaintiff drove to Denver to participate in the protests on May 30 and 31, 2020, wearing a gas mask and carrying a wooden shield with the inscription "ACAB." On May 30, Plaintiff participated in a large protest at Colfax Avenue and Lincoln Street in Denver ("Colfax and Lincoln Event"), where he alleges a Denver Police Department officer, without provocation, threw a tear gas canister at him and caused him pain.

On May 31, Plaintiff was present when law enforcement advised protestors of the 8:00 p.m. curfew. At about 8:40 p.m., Plaintiff was at the intersection of Colfax and Clarkson when law enforcement ordered the crowd to disperse in compliance with the curfew. Protestors threw water bottles at law enforcement, some containing urine. Law enforcement officers from Brighton and Commerce City responded to the protestors at this location. Plaintiff presented no evidence of Denver Police Department officers using force at Colfax and Clarkson when he was there that evening.

By 9:09 p.m., Plaintiff had migrated to a position on Colfax Avenue between Washington and Clarkson streets ("Colfax and Clarkson Event"). Law enforcement announced dispersal orders over loudspeakers. Someone threw at least one glass

3

bottle at the police line. Plaintiff kicked an object—he claims to get it out of his way. This alerted law enforcement to Plaintiff. Defendant Hyatt deployed an "OC blast" in Plaintiff's direction and Defendant Cochran fired a 40mm foam round in Plaintiff's direction. Plaintiff retreated.

At around 10:00 p.m., Plaintiff made his way to 13th and Cherokee—the area near Denver Police Department headquarters ("13th and Cherokee Event"). Plaintiff joined around 100 people. Defendant Phelan directed Jefferson County SWAT to respond to the area. Jefferson County SWAT formed a skirmish line down the street from the crowd. Jefferson County SWAT deployed less-lethal platforms at around 10:10 p.m.[1] One protestor threw a canister back at law enforcement. An object struck Plaintiff in the head. Plaintiff did not see who deployed the projectile.

Plaintiff filed suit, bringing six claims against the City and County of Denver and various other Denver employees—Fourth Amendment excessive force, Fourteenth Amendment excessive force, First Amendment free speech and assembly, First Amendment retaliation, Fourteenth Amendment procedural due process, and municipal liability failure to train. He amended his complaint twice. After Plaintiff voluntarily dismissed his claims against four of the individual Defendants, the district court dismissed the claims against the remaining individual Defendants. Plaintiff does not challenge those dismissals on appeal. The district court also dismissed Plaintiff's failure to train claim against Denver, which Plaintiff does not appeal.

---

[1] Denver utilized "less-lethal platforms" in response to the protests. These included 40mm and PepperBall systems and CS canisters containing tear gas.

Denver then moved for summary judgment. The district court granted Denver's motion, determining that (1) Plaintiff did not provide sufficient evidence for a reasonable jury to conclude that a Denver employee violated Plaintiff's constitutional rights, and (2) that Plaintiff did not demonstrate that Denver could be held liable for the actions of a nonemployee—Jefferson County SWAT—acting as Denver's agent. The district court's summary judgment order focused on the 13th and Cherokee Event and did not address the Colfax and Lincoln Event or the Colfax and Clarkson Event. The district court nevertheless entered final judgment and closed the case.

## II.

Plaintiff raises three issues on appeal. First, he argues the district court erred in granting summary judgment for Denver on the grounds that Plaintiff could not prove a Denver officer caused his injuries (as opposed to a Jefferson County officer). Second, he asserts the district court erred in granting summary judgment based solely on the events that took place at the intersection of Cherokee Street and 13th Avenue when Plaintiff asserted § 1983 claims based on the actions of Denver police at two other locations. Finally, he contends the district court erred in granting summary judgment based on an argument Denver raised for the first time in its reply brief without first allowing Plaintiff to respond. We address each issue in turn.

## A.

Plaintiff first challenges the district court's determination that Plaintiff did not provide sufficient evidence for a reasonable jury to conclude that a Denver employee violated his constitutional rights. "We review the district court's grant of summary

5

judgment de novo, applying the same legal standard as the district court." BNSF Ry. Co. v. Hiett, 22 F.4th 1190, 1193 (10th Cir. 2022) (quoting US Airways, Inc. v. O'Donnell, 627 F.3d 1318, 1324 (10th Cir. 2010)).  In conducting this review, "we consider the evidence in the light most favorable to the non-moving party."  Id. (quoting Tesone v. Empire Mktg. Strategies, 942 F.3d 979, 994 (10th Cir. 2019)). The law entitles a party to summary judgment if no genuine dispute as to any material fact exists.  Id. (citing In re MDL 2700 Genentech Herceptin (Trastuzumab) Mktg. & Sales Prac. Litig., 960 F.3d 1210, 1224 (10th Cir. 2020)).

To hold a municipality liable under 42 U.S.C. § 1983, "a plaintiff must prove that (1) an official policy or custom (2) caused the plaintiff's constitutional injury and (3) that the municipality enacted or maintained that policy with deliberate indifference to the risk of that injury occurring."  George ex rel. Bradshaw v. Beaver Cnty. ex rel. Beaver Cnty. Bd. of Comm'rs, 32 F.4th 1246, 1253 (10th Cir. 2022) (citing Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 769–71 (10th Cir. 2013)).  The causal link required in a municipal liability claim is that a municipal policy or custom set in motion a series of events that caused an employee to commit a constitutional violation.  Schneider, 717 F.3d at 779.  The district court held that Plaintiff could not establish that causal link.  To that end, the district court concluded that Plaintiff's evidence did not sufficiently show what or who caused his injury.  In the district court's view, the evidence did not establish whether a Denver officer shot him, whether a Jefferson County SWAT officer shot him or whether something else caused Plaintiff's injury.  Plaintiff appeals the district court's

6

conclusion that the evidence did not create a genuine dispute of material fact that a Denver police officer injured him.

Plaintiff relied on three pieces of evidence that the district court considered but ultimately concluded were insufficient to show causation: (1) Exhibit 191—a High Activity Location Observation ("HALO") video from a street pole at the intersection of 13th and Cherokee; (2) Exhibit 192—a HALO video from a street pole at the intersection of 14th and Cherokee; and (3) a police report completed by Denver Police Officer Craig Moen.

Exhibit 191 is a fourteen-minute video from 13th and Cherokee. The video shows police in three locations. First, a line of officers are behind a metal fence in the bottom left of the video. In the middle, officers form a line across Cherokee Street. Finally, in the top right corner, the video shows six officers on top of a parking garage. Exhibit 192 is a fourteen-minute video taken from 14th and Cherokee. Ten law enforcement officers cross 14th Street heading towards 13th Street. Officer Moen's report provides that he was "dispatched to HQ" and that he "fired at least one direct impact round from the 40mm at a male who was throwing objects at police."

The district court determined that the videos and report did not create a genuine issue of material fact. The district court said that Exhibit 191 did not demonstrate that the six officers in the parking garage were Denver Police Department officers, rather than Jefferson County SWAT officers like in the skirmish line. It also concluded that, even if they were Denver Police Department officers, the

videos did not demonstrate that any of those officers shot a projectile that hit Plaintiff. It also determined that Officer Moen's report did not sufficiently show that he, or any other Denver Police Department officer, shot Plaintiff. As to Exhibit 192, the district court acknowledged that the video shows an officer walking down an alley in the direction of the parking garage. The district court said if it was to assume that the video recording took place shortly before the projectile struck Plaintiff, and that a Denver SWAT officer approached the garage, the evidence at most supports that Denver SWAT officers were present when the projectile hit Plaintiff—not that a Denver law enforcement officer fired the projectile that hit Plaintiff. Finally, as to Officer Moen's report, the district court said that the parties did not dispute that prior to being struck, Plaintiff did not engage in violence or property destruction. Moen's report said he fired one round at a male who was throwing objects at law enforcement. Thus, the district court said Moen's report does not suggest that Moen shot Plaintiff.

Based on this analysis, the district court concluded Plaintiff's evidence did not raise a genuine issue of material fact that a Denver Police Department officer violated Plaintiff's constitutional rights. The district court found that, at most, the evidence suggests Denver law enforcement officers were present and that either a Jefferson County SWAT officer or a Denver police officer fired the projectile. It determined that a jury would have to engage in impermissible speculation to find that a Denver Police Department officer shot Plaintiff based on this evidence.

To survive summary judgment, Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." Champagne Metals v. Ken-Mac Metals, Inc., 458 F.3d 1073, 1084 (10th Cir. 2006) (quoting Palladium Music, Inc. v. EatSleepMusic, Inc., 398 F.3d 1193, 1196 (10th Cir. 2005)).  We examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law . . . ." Simpson v. Univ. of Colo. Boulder, 500 F.3d 1170, 1179 (10th Cir. 2007) (quoting Bingaman v. Kan. City Power & Light Co., 1 F.3d 976, 980–81 (10th Cir. 1993)).  "By its very terms, [the Rule 56] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).  "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." Tabor v. Hilti, Inc., 703 F.3d 1206, 1215 (10th Cir. 2013) (quoting E.E.O.C. v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1190 (10th Cir. 2000)).

Plaintiff argues that the evidence was sufficient to raise a genuine issue of material fact.  First, he argues that the district court improperly credited Officer Moen's report—fully crediting the statement that Moen fired "at a male who was throwing objects at police."  Plaintiff believes that the district court should have acknowledged other parts of his report—specifically a portion stating that Denver employees fired munitions into the crowd somewhere around the Denver Police

9

headquarters.  Plaintiff contends that video evidence casts doubt on the veracity of Moen's statement that he fired on someone after an officer was hit.  Plaintiff also attacks the veracity of Moen's report.  He also complains that the district court misquoted the report, saying that Officer Moen shot only one 40mm, when in fact the report states that he shot at least one.

Next, he argues that the videos, together with still images from those videos, show that a Denver SWAT vehicle arrived at the scene, six officers exited the vehicle, positioned at the top of a parking garage, and eventually fired projectiles that injured him.  He also argues that the videos and stills show that he was facing those six officers behind his wooden sign, not facing the Jefferson County SWAT skirmish line, when he was hit.  He also urges us to judicially notice social media images of Denver SWAT vehicles to show that it was, in fact, a Denver SWAT vehicle that pulled up and let out the six officers.

Before addressing whether Plaintiff presented sufficient evidence to withstand summary judgment, "we must first decide what evidence we will consider in making that determination."  Fye v. Okla. Corp. Comm'n., 516 F.3d 1217, 1223 (10th Cir. 2008) (citing Myers v. Okla. Cnty. Bd. of Cnty. Cmm'rs, 151 F.3d 1313, 1319 (10th Cir. 1998)).  Put simply, "we do not consider materials not before the district court." Myers, 151 F.3d at 1319 (citing John Hancock Mut. Life Ins. Co. v. Weisman, 27 F.3d 500, 506 (10th Cir. 1994)).  So "[a]lthough our review of the record is de novo, 'we conduct that review from the perspective of the district court at the time it made its ruling, ordinarily limiting our review to the materials adequately brought to the

10

attention of the district court by the parties.'" Fye, 516 F.3d at 1223 (quoting Adler

v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998)).  As to the social media

images, whether a district court could judicially notice them makes no difference to

this inquiry.  We will not consider the social media images of the Denver SWAT car

because they were not before the district court when it ruled on the summary

judgment motion.  See id.

We turn now to the evidence actually presented to the district court.  We agree

with the district court that a jury would have to jump through several hoops of

speculation and assumption to conclude that a Denver SWAT officer more likely than

not shot Plaintiff.[2]  Walton v. Powell, 821 F.3d 1204, 1209 (10th Cir. 2016)

(explaining when "the probabilities are at best evenly balanced, it becomes the duty

of the court to direct a verdict for the defendant") (quoting Prosser & Keeton on

---

[2] Plaintiff filed a Federal Rule of Appellate Procedure 28(j) letter, informing us of our recent decision in Packard v. City & Cnty. of Denver, 173 F.4th 1247 (10th Cir. 2026), and of recent proceedings in the District of Colorado case Dominick v. City & Cnty. of Denver, No. 22-CV-01343.  Both cases concerned the 2020 George Floyd protests.  In Packard, we upheld a jury verdict holding Defendant Denver liable for its officers violating the plaintiffs' constitutional rights during the protests. Packard, 173 F.4th at 1265.  In the Dominick proceedings, Denver said it reconsidered its position on liability after the Packard decision.  Plaintiff argues that the Packard decision and Defendant Denver's admission of liability in Dominick conflict with the positions Defendant Denver has taken in this appeal.  We disagree that Defendant Denver's positions are inconsistent.  The jury's findings in Packard relate to Defendant Denver violating different plaintiffs' constitutional rights.  The Packard jury did not address any alleged violations that pertain to Plaintiff.  Second, Defendant Denver represents that its stipulation of liability in Dominick explicitly applies only to the plaintiffs in that case, not to all possible plaintiffs such as Plaintiff here.  The issues in this case are not identical to the issues presented in Packard or Dominick.

11

Torts § 41 (5th ed. 1984)).  The first assumption: the vehicle Plaintiff points to in Exhibit 192 is a Denver SWAT car.  In that video, the car is far away from the camera and hard to see because of the lights.  The second assumption: Denver officers got out of the car.  To even conclude this, we would have to credit the first assumption, which, as we discuss above, requires speculation.  And even if these first two assumptions were true, other officers were in that area—specifically, Jefferson County SWAT officers were forming the skirmish line.  The third assumption (which necessarily relies on the validity of the first two assumptions): the officers that got out of the car are the ones we see on the top right of the screen on top of a parking garage in Exhibit 191.  The fourth assumption: those officers shot Plaintiff because he appears to be facing that way behind his sign when he claims he was shot.

So, for a jury to find liability, it would have to conclude that the evidence established (1) a Denver SWAT car pulled-up, and (2) Denver SWAT got out of the car, and (3) Denver SWAT went to that parking garage, and (4) a Denver SWAT officer shot him in the face.  But these conclusions are not supported by evidence, only surmise and speculation.  As the district court concluded, none of the video evidence proves that a Denver officer rather than a Jefferson County SWAT officer injured Plaintiff.

That leaves us with Officer Moen's report.  But the Moen report establishes nothing—especially considering the manner in which Plaintiff attempts to use it. Plaintiff asks us to credit the report insofar as it places Officer Moen in the area near the time of the incident, and states that he shot "at least one" 40mm round.  But he

12

doesn't want us to credit anything else in the report, including that Moen shot at a protestor who was throwing objects at law enforcement.

Plaintiff cannot have it both ways. Having attacked the report's credibility, Plaintiff cannot now treat it as trustworthy only where it serves his litigation position. His selective reliance is nothing more than impermissible cherry-picking of the evidentiary record. And even if we excised the portions of the record Plaintiff does not like, the report would still not support reversal. Keep in mind that neither party disputes that Plaintiff was not throwing anything. And the report says nothing about when Officer Moen showed up to the scene or where he was when he shot the 40mm round or what time. From Exhibit 192, we see that several police cars show up as the conflict intensifies. It could have been then. But a jury would engage in mere speculation to assume Officer Moen shot Plaintiff based on the information from his report with no other evidence. No evidence exists in the record that Officer Moen was one of the six officers that Plaintiff alleges got out of the alleged Denver SWAT car. And the report certainly does not suggest that he was.

The district court cited our decision in <u>Valdez v. Macdonald</u>, 66 F.4th 796 (10th Cir. 2023), for the proposition that a plaintiff cannot satisfy the causation element of a § 1983 claim when the plaintiff can only show that one of two officers fired a projectile that caused his injury but cannot show which one.[3] Plaintiff

---

[3] Plaintiff acknowledges our case law that a "50/50 proposition that the injury was caused by one of two defendants" cannot establish causation at summary judgment. Op. Br. at 48.

13

contends that, unlike the plaintiff in <u>Valdez</u>, he could present evidence beyond the statement that one of two defendant police officers shot him. We disagree. Plaintiff did not provide sufficient evidence such that a reasonable jury could conclude that a Denver police officer shot him in the face at the 13th and Cherokee Event. We affirm this portion of the district court's opinion.

B.

Second, Plaintiff contends that the district court erred by granting summary judgment based solely on the 13th and Cherokee Event. Defendant concedes that the district court neglected to analyze the incidents at Colfax and Lincoln and Colfax and Clarkson events. Defendant, however, argues that because no record evidence supports that a Denver policy or custom caused Plaintiff's injuries, we should affirm on alternate grounds.

In its summary judgment order, the district court noted that it had previously dismissed only the individual plaintiffs and the failure to train claim against Denver and that Plaintiff had asserted his other five claims against Denver on a municipal liability theory. Despite this acknowledgment, the district court addressed only Plaintiff's face injury and the sufficiency of the evidence demonstrating a Denver officer caused that injury. The district court did not discuss Plaintiff's alleged First Amendment injury or the other alleged events. Although the order purported to dismiss all five of Plaintiff's claims on the physical injury, the district court did not address Plaintiff's other claims. The district court erred to the extent it concluded

14

that Plaintiff's insufficient evidence that Denver caused Plaintiff's face injury at the 13th and Cherokee Event disposed of all his claims against Denver.

We decline to affirm the district court on alternate grounds. The "better practice" in situations like this is to "leav[e] the matter to the district court in the first instance." Evers v. Regents of Univ. of Colo., 509 F.3d 1304, 1310 (10th Cir. 2007) (citing Pac. Frontier v. Pleasant Grove City, 414 F.3d 1221, 1238 (10th Cir. 2005)). We thus reverse the district court's grant of summary judgment on this portion of the district court's order and remand for the district court to consider Plaintiff's remaining claims against Denver on a municipal liability theory (First Amendment Freedom of Speech and Assembly, First Amendment Retaliation, and Fourteenth Amendment Procedural Due Process) as well as to consider the excessive force claims regarding the Colfax and Lincoln and Colfax and Clarkson Events.

C.

Lastly, Plaintiff argues that the district court erred in granting summary judgment based on a causation argument Denver raised for the first time in its reply. Plaintiff thus contends that he did not have the opportunity to respond to that argument. We disagree. The question "of determining whether the district court may consider evidence and issues raised by the party moving for summary judgment in a reply brief without allowing the opposing party to respond, fits best within th[e] 'supervision of litigation' framework" that we review for an abuse of discretion. Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1164 (10th Cir. 1998).

Denver sufficiently raised the issue in its briefing to the district court. On pages 18 and 19 of Denver's motion for summary judgment, Denver argued that Plaintiff could not maintain any claim for the 13th and Cherokee Event because "[a]ny contention Plaintiff was struck by police was too speculative." Denver argued that Plaintiff did not know who struck his head and because he could not sufficiently source his injury to any particular discharge or identifiable police officer, he lacked standing to pursue his claim. True, Denver was speaking in terms of standing. In footnote 7, Denver contended that either violent agitators or Jefferson County SWAT caused Plaintiff's injury. Thus, because a third party's action caused Plaintiff's injury, Denver argued that his argument was speculative. On pages 36 and 37 of its motion, Denver argued that Plaintiff could not prove any underlying constitutional violation by Denver. On page 42, Denver argued that "Plaintiff's causation problems are substantial." On page 43, Denver wrote that "in all four events, the actions of many others—crowd members and police officers from other departments—broke any conceivable causal chain between Denver and Plaintiff's harms." Denver argued this was "especially true for the Cherokee and Clarkson events, where no Denver employee can be connected to Plaintiff's harms."

In response to this, Plaintiff said he "addressed this argument in full in his opposition, presenting evidence that police initiated the violence and the crowd was peaceful." In its reply brief, Denver took on the evidence, arguing that Plaintiff's evidence did not support that other Denver officers were present, or that the officers in the parking lot and deck were from Denver, or that any of them used force.

16

We do not believe that Denver's reply brief was inappropriate. Indeed, Denver was responding to Plaintiff's response brief and did not "spring upon the opposing party new reasons for the entry of summary judgment . . . ." Beck v. Univ. of Wis. Bd. of Regents, 75 F.3d 1130, 1134 n.* (7th Cir. 1996). We also note that Plaintiff did not move to file a surreply. Given the argument in Denver's opening brief and the later briefing, the district court did not abuse its discretion in considering Denver's causation argument.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

Entered for the Court

Joel M. Carson III
Circuit Judge